UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------

| | | |
|---|---|---|
| CHARLES E. AUSTIN, *et al.*, | : | CASE NO. 4:01-CV-0071 |
| Plaintiffs, | : | |
| | : | ORDER AND OPINION |
| vs | : | [Resolving Doc. No. 674] |
| REGINALD WILKINSON, *et al.*, | : | |
| Defendants. | : | |

------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before the Court is the Plaintiffs' Motion to order the Defendants to comply with their stated policies for security level 4 inmates [Doc. 674]. The Defendants oppose the Motion [Doc. 688]. For the following reasons, the Court GRANTS the Plaintiffs' Motion and ORDERS the Defendants to take action consistent with this Opinion.

**I. Background**

Gregory Durkin was an inmate at the Ohio State Penitentiary ("OSP") on March 17, 2006, when the prison management reduced his security placement to 4A. (Mot. 4.) Soon thereafter, Durkin requested a transfer to the Southern Ohio Correctional Facility ("SOCF"). (*Id.*) OSP officials scheduled a hearing, which Durkin waived his right to attend. (*Id.* at 5.) After the hearing, OSP denied the transfer request, although Durkin did not receive any written notification or reasons

Case No. 4:01-CV-0071
Gwin, J.

for the decision. (*Id.*) On April 30, 1006, Durkin sent a kite[1] to the acting Unit Management Administrator inquiring why he was still at OSP. (*Id.* at Ex. 4) On May 4, 2006, William Eleby, Chief of the Bureau of Classification and Reception, sent Durkin a letter affirming his 4A security level and OSP placement, but provided no explanation. (*Id.* at Ex. 5.) On May 26, 2006, the Plaintiffs filed the present motion, requesting that this Court (1) enjoin the Defendants from retaining any inmate at OSP involuntarily and (2) apply the ruling specifically to Durkin. (*Id.* at 7.)

On July 13, 2006, the Defendants ("Ohio") responded, arguing that the Plaintiffs' claims were moot because Durkin was transferred to the Toledo Correctional Institution ("TCI") on June 8, 2006. (Reply Br. 1.) On July 24, 2006, the Plaintiffs replied, saying that their motion was still justiciable because the request was not specific to Durkin. They further requested that this Court order Ohio to quickly transfer inmates who do not consent to placement at OSP instead of delaying several weeks or longer, as Ohio had done with Durkin and other inmates. (Pl. Reply Br. 7.) As examples, the Plaintiffs cited two level 4B inmates who had been retained at OSP for weeks after they requested transfer. (*Id.* at Ex. 1, 2.)

## II. Analysis

The first question before the Court is whether Durkin's transfer renders the Plaintiffs' motion moot or whether a justiciable issue still exists. If the issue is justiciable, then the Court must determine whether relief is appropriate.

**A. Mootness**

The Court reiterates the mootness standard that it employed in resolving another issue in this

---

[1] A "kite" is the generally accepted form of correspondence between inmates and prison officials. (*See* Mot. Ex. 4.)

Case No. 4:01-CV-0071
Gwin, J.

matter. (March 21, 2006 Order 10-13.) It is well established that a case's becoming moot removes a federal court's jurisdiction. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70, 104 S. Ct. 373, 374-75 (1983) ("Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.") (citing *DeFunis v. Odegaard*, 416 U.S. 312, 316, 94 S. Ct. 1704, 1705, 40 L. Ed. 2d 164 (1974)). However, well-settled doctrine permits exceptions to the mootness rule under some circumstances. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.(TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 708 (2000) ("voluntary cessation" exception); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 594, 119 S. Ct. 2176, 2184 (1999) ("capable of repetition, yet evading review" exception). The voluntary cessation exception holds that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc.*, 528 U.S. at 189 (*citing City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152. But for this exception, "courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Id.* at 289 n.10 (internal quotations omitted). Alternatively, the "capable of repetition, yet evading review" exception applies where the following two circumstances are present: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again . . . ." *Spencer v. Kemna*, 523 U.S. 1, 17, 118 S. Ct. 978, 988 (1998) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481, 110 S. Ct. 1249, 1255, 108 L. Ed. 2d 400 (1990)).

The Plaintiffs correctly claim that this Court's March 21, 2006 Order ("March 21 Order") authorizes the present motion. (Pl. Reply Br. 4.) Specifically, the Court found that, at the time of

Case No. 4:01-CV-0071
Gwin, J.

the Order, the Plaintiffs lacked standing to bring this claim because they failed to provide "evidence that level 4 inmates are being held at OSP without consent and without waiver of their rights." (March 21 Order 24.) Accordingly, the Plaintiffs argue, they are now entitled to relief because they have provided such evidence. (Pl. Reply Br. 5.) The Plaintiffs also assert that Ohio's mootness argument should fail because it falls under the "capable of repetition, yet evading review" exception to the doctrine. (*Id.* at 4-5.)

The Court finds that the current practice does not fall under that exception, but rather under the voluntary cessation exception. Ohio is apparently able to transfer inmates fairly quickly when required to, as demonstrated by its transferring Durkin from OSP just thirteen days after the Plaintiffs filed the present motion. Moreover, the Plaintiffs had no trouble demonstrating a pattern of transfer delays with the cases of Donald Saffell and David Dennison. In providing this additional evidence, the Plaintiffs have "demonstrat[ed] that, if unchecked by the litigation, the defendant's allegedly wrongful behavior will likely occur or continue, and that the 'threatened injury [is] certainly impending.'" *Friends of the Earth*, 528 U.S. at 190 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). This scenario therefore falls squarely within the *Friends of the Earth* rule.

Ohio also asserts that the current motion is moot because Durkin has been transferred to TCI, and that the delayed transfer was caused by OSP management's negligence. (Reply Br. 2-3.) Ohio then argues that, because Durkin's constitutional rights are no longer implicated, and because no negligence cause of action exists under the Prison Litigation Reform Act ("PLRA"), the Plaintiffs fail to state a justiciable claim. (*Id.* at 3.)

Ohio's claims are unavailing. The Plaintiffs' original Motion was broad in scope and requested relief for any inmate who suffered similar treatment to Durkin. (Mot. 7.) Moreover, the

-4-

Case No. 4:01-CV-0071
Gwin, J.

Plaintiffs claim ongoing constitutional violations for other inmates. (*Id.*) Because the Plaintiffs may still bring this claim, the Court now considers whether the incurred delays in transferring inmates violate their constitutional rights.

**B.  Substantive Constitutional Claim**

Ohio claims that it has demonstrated "reasonable administrative factors" justifying the delay in transferring Durkin. (Reply Br. 3.)  As a preliminary matter, Ohio has provided no information concerning the delays' reasonableness, nor any information regarding the administrative procedures that caused them.  Moreover, in so arguing, Ohio essentially contends that the several week delay does not implicate the inmates' liberty interest in avoiding erroneous placement at OSP.  However, the Supreme Court defined the liberty interest in terms of the conditions at OSP and the appropriateness of an inmate's presence there, without reference to the length of time an individual is improperly placed there. *See Austin v. Wilkinson*, 545 U.S. 209, 125 S. Ct. 2384, 2394-95 (2005).

The Court interprets this holding to mean that any period that lower-security inmates spend at OSP without their consent implicates this liberty interest.  The Court acknowledges that instantaneous transfer is impossible, and that administration and logistical issues may cause some unavoidable delays.  Ohio, however, must transfer the inmates with all due speed after receiving their valid transfer request.  By Ohio's own admission, OSP officials negligently responded to Durkin's request, leaving him subject to an "atypical and significant hardship" unnecessarily. (Reply Br. 3.) Saffell and Dennison's unanswered requests further indicate Ohio's negligence. Ohio has provided no evidence to suggest otherwise.  Accordingly, the Court finds that the delays in transferring inmates violates their liberty interest in avoiding erroneous placement at OSP.

Case No. 4:01-CV-0071
Gwin, J.

### III. Conclusion

For the reasons described above, the Court finds that Ohio violated certain inmates' liberty interest in delaying approval and execution of their transfer requests. Accordingly, the Court **GRANTS** the Plaintiff's Motion and further **ORDERS** the Defendants henceforth to transfer inmates at security levels 4 or below with all due speed upon receipt of a valid transfer request.

IT IS SO ORDERED.

Dated: August 2, 2006                              s/      *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE