UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                          :
CHARLES E. AUSTIN, et al.,                :        CASE NO. 4:01-CV-71
                                          :
            Plaintiffs,                   :
                                          :        OPINION & ORDER
vs.                                       :
                                          :        [Resolving Doc. No. 716]
REGINALD WILKINSON, et al.,               :
                                          :
            Defendants.                   :
                                          :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        With this Opinion and Order, the Court decides whether to grant the motion of Plaintiffs

Charles E. Austin, et al. ("Plaintiffs" or "OSP Inmates") that requests the Court order Defendants

Reginald Wilkinson, et al. ("Defendants" or "Ohio") to modify their proposed prison administration

policies.  Plaintiffs say modification is needed to protect the constitutional rights of inmates

incarcerated at the Ohio State Penitentiary ("OSP") because Defendants' proposed policies fail to

give sufficient notice to inmates and, therefore, violate the due process rights of the OSP inmates.

[Doc. 716.]  Defendants disagree and say that their proposed policies meet the constitutional

requirements set forth by the Supreme Court in *Wilkinson v. Austin*, 545 U.S. 209 (2005), as well

as previous Orders of this Court.  [Doc. 723.]  As a result, Defendants request the Court deny

Plaintiffs' motion.  *Id.*

        For the reasons presented below, the Court GRANTS in part and DENIES in part Plaintiffs'

motion.

## I.  Background

At the outset, the Court notes that it has recorded this case's extensive background in its Opinions and Orders of, *inter alia*, March 21, 2006, August 2, 2006, and August 7, 2006.  [Docs. 659, 699, 703.]  The Court refers the reader to these opinions and incorporates these previously discussed findings.

The parties' most recent disagreement comes from Defendants' amendment to classification procedures for male inmates entering the OSP.  The amendments followed the Supreme Court's ruling in *Wilkinson v. Austin*, 545 U.S. 209 (2005).  Prior to *Wilkinson*, this Court considered a number of Defendants' prison administration policies for the OSP and ruled on their constitutionality.  In January 2002, on the eve of the initial trial in this action, Defendants approved "Level 4 / Level 5 Classification for Male Inmates," referred to as "New Policy 111-07" or "New Policy."  Thus, this Court and the Sixth Circuit considered constitutional issues from Defendants' adoption of New Policy 111-07.   *See, e.g.*, *Austin v. Wilkinson*, 189 F. Supp. 2d 719 (N.D. Ohio 2002); *Austin v. Wilkinson*, 204 F. Supp. 2d 1024 (N.D. Ohio 2002); *Austin v. Wilkinson*, 372 F.3d 346 (6th Cir. 2004).  Likewise, the Supreme Court considered the New Policy in *Wilkinson* and found its provisions constitutionally adequate.  *See, e.g.*, *Wilkinson*, 545 U.S. at 220 (holding that "the procedures set forth in the New Policy are sufficient to satisfy the Constitution's requirements").

After the Supreme Court's ruling in *Wilkinson*, Defendants again amended their prison administration policies for the OSP.  *See* Doc. 710-2.  Defendants did so, in part, to conform with the Court's post-*Wilkinson* Opinions and Orders of March 21, 2006, August 2, 2006, and August 7, 2006.  [Doc. 753.]  Defendants also appear to have made the second amendment to enable

Case No. 4:01-CV-71
Gwin, J.

separate administration of Level 4 and Level 5 inmates at the OSP. The Court refers to Defendants' second amended policy as the "Proposed Policy," which appears on the docket as Document Number 710-2. Defendants' second amendment, i.e., the change from the New Policy 111-07 to the Proposed Policy, occasions Plaintiffs' current complaint. Generally, the Plaintiffs say that the Court should require Defendants to adhere to the letter of New Policy 111-07, or a very-near facsimile of the prison administration policies found constitutional in *Wilkinson*. [Docs. 716, 752.] Plaintiffs also complain that Defendants' Proposed Policy no longer encompasses the management of Level 4 inmates, which Ohio seeks to administer through new procedures entitled "Inmate Security Classification Level 4 at the OSP." [Doc. 738-2.]

Predictably, Ohio defends the Proposed Policy as constitutionally sound. [Doc. 753.] Defendants say that the Proposed Policy provides the same degree of constitutional protection as the Supreme Court-approved New Policy 111-07. *Id.* Ohio also asserts that the Court need show "substantial deference to [the] professional judgment" of the OSP's prison administrators and refrain from taking any action regarding the State's establishment of a standalone policy for Level 4 inmates. *Id.*

On February 16, 2007, the Court conducted a bench trial in this matter, during which the Court received the parties' testimony, documentary evidence, stipulations, and physical exhibits. *See, e.g.*, Doc. 735. Thereafter, the Court allowed the parties to submit proposed findings of fact and conclusions of law, which both sides did on May 21, 2007. [Docs. 752, 753.] The Court now considers Plaintiffs' five issues relating to the classification, placement, and retention practices at the OSP that Plaintiffs say contravene the Constitution. [Doc. 752.]

With their motion, the Plaintiffs claim that:

-3-

> Defendants do not provide due process when determining a prisoner's expected
> length of stay on Level 5 during the 30 day review after placement at OSP
>
> In annual security level assessments after a prisoner's initial placement, Defendants
> do not provide meaningful review
>
> Defendants do not provide a reasoned decision for their security assessments
>
> Defendants do not provide due process when a recommendation to reduce a
> prisoner's security level is reversed
>
> Defendants' proposed policies do not provide due process protections "comparable"
> to New Policy 111-07 as described by the Supreme Court

*Id.*

The Court discusses the merits of the parties' arguments and presents its

conclusion

on each of Plaintiffs' five issues below.

## II. Analysis

**Plaintiffs' Issue 1:**   **"Defendants do not provide due process when determining a prisoner's expected length of stay on Level 5 during the 30 day review after placement at OSP"**

The parties' first disagreement involves the OSP's thirty-day review process, during which

prison administrators give some review to the Level 5 placement and give inmates some prediction

whether an incoming inmate will remain on Level 5 for more or less than three years. Plaintiffs say

that, upon an inmate's arrival at the OSP, Defendants determine how long the inmate will stay on

Level 5 without providing him adequate due process. *See, e.g.*, Doc. 752 at 7. Specifically,

Plaintiffs claim that

Case No. 4:01-CV-71
Gwin, J.

> [d]uring the thirty (30) days after a prisoner is placed on Level 5 at OSP, Defendants
> determine whether the prisoner can expect to remain on Level 5 for more or less than
> three years due to the seriousness of his placement offense. This is done without
> written criteria, without notice and hearing prior to the staff determination, and
> without a reasoned decision explaining the rationale for the projected duration.

*Id.* Plaintiffs say that insufficient process during the proposed thirty-day review renders the procedure unconstitutional and represents "a current and ongoing violation of prisoners' due process rights." *Id.* at 10. Plaintiffs do not request a specific remedy, but, presumably, would ask the Court to impose substantive changes to Defendants' proposed policy to correct this alleged violation.

Defendants reply that the OSP's proposed thirty-day review process incorporates the procedures contained in the New Policy approved by the Supreme Court in *Wilkinson* and, therefore, comports with due process requirements. *See* Doc. 753 at 15 (citing *Wilkinson*, 545 U.S. at 229). Defendants particularly assert that the OSP's thirty-day intake procedures compare to the "informal, non-adversary procedures" upheld by the Supreme Court in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 16 (1979) and *Hewitt v. Helms*, 459 U.S. 460, 473-76 (1983). *Id.* As a result, Defendants conclude that the Court need not impose additional safeguards on the OSP's thirty-day review process. *Id.*

As set forth in its August 7, 2006 Opinion and Order, the Court cannot properly require that Ohio adhere to the letter of the New Policy. *See* Doc. 703 at 8. The Court recognizes that "Ohio has the authority to modify its procedure,"; however, "the modified procedure must still comport with the Due Process requirements of notice and opportunity to be heard." *Id.* Thus, so long as the OSP's thirty-day review process meets the due process requirements set forth in *Wilkinson*, including reflection of the non-adversarial measures found constitutional in *Greenholtz* and *Hewitt*, the Court will not compel Defendants to adopt other safeguards.

Case No. 4:01-CV-71
Gwin, J.

In *Wilkinson*, the Supreme Court considered the OSP's thirty-day review process as set forth

in the New Policy and found its provisions sufficiently constitutional. *Wilkinson*, 545 U.S. at 217.

The Supreme Court characterized the OSP's thirty-day review:

> Inmates assigned to OSP receive [a] review within 30 days of their arrival. That
> review is conducted by a designated OSP staff member, who examines the inmate's
> file. If the OSP staff member deems the inmate inappropriately placed, he prepares
> a written recommendation to the OSP warden that the inmate be transferred to a
> lower security institution. If the OSP warden concurs, he forwards that transfer
> recommendation to the Bureau of Classification for appropriate action. If the inmate
> is deemed properly placed, he remains in OSP and his placement is reviewed on at
> least an annual basis according to the [OSP's] initial three-tier classification review
> process . . .

*Id.* (citation omitted).

Thus, in *Wilkinson*, the Supreme Court sanctioned Defendants' reliance on "informal, non-

adversary procedures" in completing its thirty-day review process of inmates coming into the OSP.

Contrary to Plaintiffs' assertions, Defendants' proposed policy substantially mirrors the New

Policy for new prisoner intake. Specifically, the proposed policy provides:

E. Thirty (30) Day Review/Orientation Process

1. Placement at level 5 varies in length depending on the nature of the initiating
incident, criteria for placement, and/or demonstrated behavior in assigned level. All
inmates placed into this level must have a review of their classification level
completed by an assigned unit staff member within thirty (30) days of placement to
determine if they have been properly classified. This review must include a review
of an inmate's file to ensure that proper documentation has been included detailing
how/why the inmate has been classified into level 5.

2. If the review finds that the inmate meets the appropriate criteria, unit and/or
programming staff will meet with the inmate to explain the classification and review
processes and what the expectations are concerning his behavior, and appropriate
program participation. This meeting will also afford the inmate the opportunity to
request any needed assistance while assigned in the classification level. Staff will
advise the inmate whether release to a general population institution in three (3)
years or less appears reasonably possible.

-6-

Case No. 4:01-CV-71
Gwin, J.

3. If the review finds that the inmate does not meet the level 5 criteria, the reviewing staff member must forward a written recommendation through the Deputy Warden of Operations, to the Warden recommending that the inmate be transferred to an appropriate institution. The reasons for the recommendation must be listed to reflect why the inmate is not appropriate for level 5 and is more appropriate for another level.

4. If the Warden concurs with the recommendation, the packet will then be forwarded, along with a newly completed Supervision Review Form (male forms DRC2098, DRC2094, DRC2338 or female forms DRC2605, DRC2606, DRC2607) to the [Bureau of Classification and Reception] for appropriate action. If the Warden disagrees with the staff member's recommendation, the inmate remains at his current status, and this decision is not appealable.

*See* Doc. 710-2 at 6.

The Court finds that the OSP's thirty-day review process outlined in the proposed policy provides a similar degree of constitutional protections as the New Policy reviewed and approved by the Supreme Court in *Wilkinson*. Thus, because the OSP's thirty-day review process meets the due process requirements set forth in *Wilkinson*, including reflection of the non-adversarial measures found constitutional in *Greenholtz* and *Hewitt*, the Court will not compel Defendants to adopt any additional safeguards. Absent specific allegations of due process violations, the Court does not find Defendants' thirty-day review process unconstitutional and, therefore, will not grant Plaintiffs' requested relief.

**Plaintiffs' Issue 2:** **"In annual security level assessments after a prisoner's initial placement, Defendants do not provide meaningful review"**

Plaintiffs next challenge Defendants' methods for conducting annual security reviews after an inmate's placement at the OSP. *See* Doc. 752 at 31-32. Plaintiffs characterize the annual security reviews as "meaningless because [Ohio's] decision [to retain some prisoners indefinitely] has been predetermined and the prisoner's positive conduct while at the OSP is routinely held to be

-7-

outweighed by his placement offense." *Id.* Plaintiffs assert that "Defendants retain some prisoners year after year regardless of good or excellent conduct while on Level 5." *Id.* Plaintiffs say that the predicted duration of stay operates as a predetermined decision to continue confinement on Level 5. *Id.* at 10-11. Plaintiffs provide the facts surrounding Defendants' annual security reviews of inmates Roy Slider, John Daniels, and Alvin Jones, a/k/a Mosi Paki as evidence of the outcome determinative nature of the OSP's annual security reviews. *Id.* at 11-14. As with the first issue, Plaintiffs do not request any specific relief from the Court. *Id.* at 18.

In part, Plaintiffs appear to again challenge Defendants' anticipated length of stay policy or lack thereof. Defendants respond that *Wilkinson* does not require them to establish an anticipated length of stay policy. Defendants contrast the District Court's order imposing such a provision with the Supreme Court's holding that the District Court's intervention was in error. On March 26, 2002, this Court ruled, "At least twice a year, the Department will notify the inmate in writing and orally of the inmate's progress . . . Such notice will advise the inmate what specific conduct is necessary for that prisoner to be reduced from Level 5 and the amount of time it will take . . . ". [Doc. 753, at 20.] The Supreme Court then overturned this Court: "[T]he procedures set forth in the New Policy [that do not contain an anticipated length of stay provision] are sufficient to satisfy the Constitution's requirements; it follows, then, that the procedural modifications ordered by the District Court and affirmed by the Court of Appeals were in error." [*Id.*]

Defendants further contend that their annual review procedures are adequate. Defendants assert that, because "inmates are provided with notice of the factual basis for the proposed placement and subsequent annual reviews," this notice "demonstrates that inmates are provided with sufficient protection to comply with the Due Process Clause." *See* Doc. 723 at 4-5, 15.

Again, the Court turns to *Wilkinson* to assess the parties' positions. In *Wilkinson*, the Supreme Court discusses not only the need for notice of authorities' placement decisions to ensure inmates' due process rights, but also underlines the requirement that the content of the communication be adequately detailed to "serve[] as a guide for future behavior." *See* 545 U.S. at 226 (citing *Greenholtz*, 442 U.S. at 16). The Supreme Court also instructs that "[c]ourts must give substantial deference to prison management decisions" before mandating substantive operating changes "when correctional officials conclude that a prisoner has engaged in disruptive behavior." *Id.* at 228. Thus, prison officials and courts correctly consider an inmate's behavior in decisions they make that affect the terms of an inmate's incarceration. Logically, this consideration should encompass the inmate's positive and negative behavior, particularly in light of scarce resources available to administer most states' penal systems, including that of Ohio.

Based on *Wilkinson*'s emphasis on the importance of an inmate's behavior as a benchmark for the terms of his incarceration and after reviewing the "Annual supervision reviews for level 5 inmates" contained in the proposed policy, the Court finds Plaintiffs' request to be reasonable in asking that Defendants communicate in sufficient detail their consideration of an inmate's positive behavior at the OSP to the inmate at the time of the annual security review. To do otherwise would provide notice, but no content and, as such, run the risk of falling short of the Constitution's adequacy requirement.

Thus, the Court orders Defendants to consider and communicate in sufficient detail inmates' positive behavior during the annual review process.

**Plaintiffs' Issue 3:** **"Defendants do not provide a reasoned decision for**

**their security assessments"**


Plaintiffs' third issue raises two specific complaints about the Classification Committee's annual determination whether to retain an inmate on Level 5 or reduce his security classification. Plaintiffs say that, unlike New Policy 111-07, the Proposed Policy "does not require the Classification Committee to identify the factors relied on in reaching their determination as to whether or not a prisoner should remain on Level 5." Doc. 752 at 19. Plaintiffs also say that the OSP's administrators often fail to record adequate reasons for their decision to retain a prisoner on Level 5 and, as a result, the prisoner does not have "notice as to what he must do in the future to be reduced to a lower security level." *Id.* Once again, Plaintiffs characterize these deficiencies as "current and ongoing constitutional violations." *Id.* at 21.

In comparing the Proposed Policy and New Policy 111-07, the Court finds that both policies require the Classification Committee identify the basis for its decision to retain a prisoner on Level 5. In fact, the Proposed Policy appears to provide an inmate with more process during his annual supervision review than New Policy 111-07. First, both policies contain eighteen factors that the Classification Committee must take into consideration "at a minimum" in coming to a Level 5 retention decision. *See* New Policy 111-07 at 9-10; Proposed Policy at 7-8. Further, both policies instruct the Classification Committee to consider the eighteen factors, as well as the circumstances underlying an inmate's initial placement at the OSP, the inmate's subsequent adjustment to the facility, and his "demonstrated attitude" in determining whether to continue an inmate on Level 5. *See* New Policy 111-07 at 10; Proposed Policy at 8.

New Policy 111-07 then instructs the Classification Committee to "identify the basis for its

decision and the factors relied upon" in its recommendation to the warden.  *See* New Policy 111-07

at 10.  The Proposed Policy instructs the Classification Committee that it "must articulate the

reason(s) for its recommendation in a written statement (form DRC2660)."  *See* Proposed Policy at

8.  "The statement need not be lengthy, but must include every basis for the recommendation, and

may not be merely conclusory."  *Id.*  Finally, unlike New Policy 111-07, the Proposed Policy

continues that "[t]he inmate must be provided promptly with a copy of the Classification

Committee's recommendation and reason(s), ensuring the inmate sufficient time to review it, prepare

a defense, and file any objections (form DRC2596) before the next review."  *Id.*  Thus, contrary to

Plaintiffs' assertion, the Proposed Policy appears to provide as many, if not more,  mechanisms than

New Policy 111-07 for an inmate to understand and participate in his annual supervision review.

Moving to Plaintiffs' second complaint against the OSP's annual supervision review, they

present compelling evidence that the prison administrators often do not provide a "reasoned

decision" sufficient for an inmate to understand what steps he must take to reduce his Level 5

security assessment.  Particularly noteworthy are the OSP inmates' "Notices of Anticipated Length

of Stay at Level Five Security Classification" that reflect the inmate's apparent substantial positive

progress, contain no negative comments, yet conclude that the Classification Committee is

> of the opinion that [the inmate's] placement offense is so severe that [he] should
> remain confined at the OSP for many years regardless of [his] behavior while
> confined at the OSP.  We do not believe you can be safely managed at a lower
> security level.  The type of offense you committed makes me believe that, if you
> commit another offense, the likelihood of the new offense being a serious offense is
> high.

*See, e.g.*, Doc. 752-7 (Inmate John Daniels), 752-14 (Inmate Alvin Jones).

The Court agrees with Plaintiffs that these notices do not provide inmates with a reasoned

decision that gives them notice as to what they must do to reduce their status from Level 5.  Indeed,

these notices tell inmates that, regardless of their good behavior and self-improvement, they can expect to "remained confined at the OSP for many years."

This message runs counter to the Supreme Court's jurisprudence and this Court's previous Orders. An inmate's "notice of the factual basis leading to [a deprivation of liberty] and a fair opportunity for rebuttal . . . are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Wilkinson*, 545 U.S. at 225-26 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 15 (1979); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 543 (1985); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). "Requiring [the OSP] officials to provide a brief summary of the factual basis for the classification review and allowing the [OSP] inmate a rebuttal opportunity safeguards against the inmates being mistaken for another or singled out for insufficient reason." *Id.* at 226. *See also* March 21, 2006 Order [Doc. 659 at 19], August 7, 2006 Order [Doc. 703 at 11]. Thus, the Proposed Policy and the OSP's procedures in implementing them must provide for a reasoned decisions to an inmate as to what he must do to reduce his classification status from Level 5.

The reader will recall that any reduction from Level 5 to Level 4 results in a transfer to a maximum security placement. Given that placement at Level 5 costs the State of Ohio significant additional money than placement at maximum security placement at Level 4, the Defendants should provide more justification why they want to spend more money to keep an inmate at Level 5.

**Plaintiffs' Issue 4:** **"Defendants do not provide due process when a recommendation to reduce a prisoner's security level is reversed"**

Plaintiffs' fourth issue raises three complaints: two regarding the procedural mechanisms in the Proposed Policy's "reversal" provisions and one regarding Ohio's "narrowed scope" of its policy

from Level 4 and Level 5 inmates in New Policy 111-07 to Level 5 inmates only in the Proposed Policy. *See* Doc. 752 at 21-27. The Court addresses the two "reversal" complaints here and takes up the "narrowed scope" complaint in its discussion of Plaintiffs' fifth issue.

In their fourth challenge, Plaintiffs say that the Proposed Policy "does not require Defendants to grant [an inmate] a face-to-face opportunity to be heard" before a higher official reverses a recommendation against an inmate's Level 5 placement or retention. *Id.* at 25. Plaintiffs also complain that the Proposed Policy does not require an OSP administrator who reverses a recommendation against Level 5 placement to state the basis of his reversal. *Id.* According to Plaintiffs, these two procedural deficiencies in the Proposed Policy's reversal process create "current and ongoing constitutional violations." *Id.* at 26-27.

Defendants do not respond directly to Plaintiffs' request. Instead, several elements of Defendants' pleadings tangentially address Plaintiffs' fourth issue. First, with regard to reversals of recommendations to reduce an inmate's classification from Level 5, Defendants claim that they have already implemented the procedures required by this Court's March 21, 2006 Order. Doc. 753 at 8-10. Defendants highlight that these procedures include "notice [to the inmate], the reason(s) for the contemplated reversal, an opportunity to respond, and a reasoned decision for any subsequent reversal of the Classification Committee's recommendation against placement into Level 5." *Id.* at 9. To the extent that their current procedures "already" comply with the Court's March 21, 2006 Order, Defendants do not believe that they need to adopt additional or different practices.

Second, Defendants say that some of Plaintiffs proposals "go beyond what *Wilkinson* requires." *Id.* at 9, 12. Defendants take special issue with Plaintiffs' requests for "face-to-face hearings" and "specification of what was inadequate or erroneous in the [classification]

recommendation." *Id.* Defendants view these proposed requirements as "attributes of an adversarial proceeding" and, as such, claim that they go beyond the scope of *Wilkinson*'s requirements. *Id.* at 12. According to Defendants, these "procedural proposals are at odds with the requirement in *Wilkinson* that the State's interest in security and scarce resources be considered in deciding what procedures are required." *Id.* at 9. Defendants charge that Plaintiffs "ignor[e] those considerations" and seek to "mandate additional expenditures for unnecessary procedural safeguards which might jeopardize control of the prisoners." *Id.* at 13.

Finally, Defendants say that, in the context of an informal, non-adversarial hearing of the type required by *Wilkinson*, "a brief description of the reasons supporting a [classification or reversal] decision is the standard for determining the constitutional sufficiency of a written decision." *Id.* at 19. Providing an inmate with anything more than "a brief description of the reasons supporting the [classification or reversal] decision" would "go beyond what Wilkinson requires." *Id.* at 21-22. Because Defendants already have a policy requirement "that the Classification Committee, the Warden and the Bureau must make a recommendation [decision] that includes: 'the reason(s) for the recommendation in a written statement," Defendants say that they comply with this Court's March 21, 2006 Order. *Id.* at 22.

Historically, Defendants allowed a higher reviewing authority at OSP or the Bureau of Classification at Ohio's Department of Corrections to reverse a decision of the Classification Committee or warden who had recommended against an inmate's placement at the OSP. Ohio allowed these reversals without providing the OSP inmates with notice or hearing rights. Plaintiffs sued, the Court found that Defendants' reversal procedures violated inmates' due process rights, and the Supreme Court agreed. *See Wilkinson*, 545 U.S. at 226-28. Thus, in its March 21, 2006 Opinion

and Order, the Court instructed Defendants that

> Ohio may use a three[-tiered] placement and retention review process whereby a classification committee, a warden (or representative), and the Bureau of Classification can each review the cases of inmates being considered for OSP placement or retention. If a reviewer at any [tier] of the process recommends against OSP placement/retention, the process shall terminate, the decision against placement/retention shall control, and no subsequent reviewer during that investigation shall overturn the recommendation against placement/retention unless Ohio affords [the effected inmate] notice, an opportunity to respond, and a reasoned decision for any subsequent reversal of an earlier recommendation against placement[/retention] at OSP.

Doc. 659 at 26-27.

In accordance with *Wilkinson*'s requirements and the Court's March 21, 2006 Opinion and Order, Defendants incorporated this mandate in their Proposed Policy. Now, a higher official's reversal of a recommendation against an inmate's placement on Level 5 creates notice and hearing rights in the OSP's inmates. For example, within the context of a Level 5 placement decision, the Proposed Policy provides as follows:

> D.  Procedure for placing an inmate into level 5

> 3.  Warden or designee's recommendation

> a.   If the Classification Committee recommends against placement [on Level 5], the process for level 5 placement will terminate and the recommendation against placement must control; unless the Warden or designee overturns the recommendation against placement. In that event the inmate must receive notice, the reason(s) for the contemplated reversal, an opportunity to respond, and a reasoned decision for any subsequent reversal of the Classification Committee's recommendation against placement onto level 5.

> b.   The warden or designee must review the notice, the Classification Committee's recommendation and reason(s), any objections filed by the inmate, and any other relevant information presented by staff or the inmate.

> c.   The Warden or designee must make a recommendation and must articulate the reason(s) for the recommendation in a written statement (forms DRC2653, DRC2657). The statement need not be lengthy, but must include

every basis for the recommendation, and may not be merely conclusory.

d.   The inmate must be provided with a copy of the Warden [sic] or designee's recommendation and reason(s) promptly, ensuring the inmate sufficient time to review it, prepare a defense, and file any objections (form DRC2596) before the review of the Chief of the Bureau of Classification and Reception (BCR) or designee. The inmate must be notified upon receipt of the Warden's recommendation that he or she may file formal objections with the Chief of the BCR or designee no later than fifteen (15) days from the date the inmate is served with the Warden's recommendation and reason(s).

4.   Chief of the BCR or designee's decision

a.   If the Warden or designee recommends against placement, the process for level 5 placement will terminate and the recommendation against placement must control; unless the Chief of the BCR or designee overturns the recommendation against placement. In that event the inmate must receive notice, the reason(s) for the contemplated reversal, an opportunity to respond, and a reasoned decision for any subsequent reversal of the Warden [sic] or designee's recommendation against placement into level 5.

b.   The Chief of the BCR or designee must review the notice, the recommendations and reason(s) of the Classification Committee and the Warden or designee, any objections filed by the inmate, and any other relevant information presented by staff or the inmate.

c.   The Chief of the BCR or designee must decide whether to place the inmate into level 5 and must articulate the reason(s) for his or her decision in a written statement (forms DRC2654, DRC2655). The statement need not be lengthy, but must include every basis for the decision, and may not be merely conclusory.

d.   The inmate must be provided promptly with a copy of the decision and the reason(s).

*See* Proposed Policy at 5-6.

The Proposed Policy contains similar procedures regarding the reversal of a recommendation against retaining an inmate on Level 5 after his annual supervision review. *Id.* at 8-9.

In their most recent complaint, Plaintiffs would like the notice and hearing requirements to include an inmate's "face-to-face opportunity to be heard" before a higher administrator can reverse

-16-

a decision for placement at maximum security Level 4. However, contrary to Plaintiffs' wishes, due

process does not require Defendants to provide an inmate with a face-to-face hearing prior to an OSP

administrator's reversal of a recommendation against his placement or retention on Level 5. Instead,

"informal, nonadversary procedures" appropriately provide sufficient process due to an inmate when

a higher official reverses recommendation against Level 5 placement or retention.

In *Wilkinson*, the Supreme Court held that

> Ohio's New Policy [111-07] provides informal, nonadversary procedures comparable
> to those we upheld in *Greenholtz* and *Hewitt* [*v. Helms*, 459 U.S. 460 (1983)], and
> no further procedural modifications are necessary in order to satisfy due process
> under the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] test. Neither the District Court
> nor the Court of Appeals should have ordered the New Policy altered.

*Wilkinson*, 545 U.S. at 229.

The Supreme Court instructs that, where a prison administration decision "draws more on

the experience of prison administrators, and where the State's interest implicates the safety of other

inmates and prison personnel, the informal, non-adversary procedures set forth in *Greenholtz* and

*Hewitt* provide the appropriate model" to protect an inmate's due process rights. *Wilkinson*, 545

U.S. at 228-29 (full citations omitted). In *Greenholtz*, a parole procedure case, the Supreme Court

rejected the District Court's imposition of administrative procedures equating to a "full formal

hearing," including an inmate's personal appearance before the parole board, during a parole

eligibility determination. 442 U.S. at 5-6. Instead, the Supreme Court found that a "parole release

decision is . . . essentially an experienced prediction based on a host of variables." *Id.* at 16.

Consequently, prison administrators need only provide an inmate "an opportunity to be heard, and

when parole is denied [they] inform[ ] the inmate in what respects he falls short of qualifying for

parole; this affords the process that is due under these circumstances. The Constitution does not

require more." *Id.*

Similarly, *Hewitt* approved "informal, nonadversary" proceedings in considering the process due to inmates after their confinement to administrative segregation. The Supreme Court described what was required:

> We think an informal, nonadversary evidentiary review is sufficient for both the decision that an inmate represents a security threat and the decision to confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement by the inmate will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied. This informal procedure permits a reasonably accurate assessment of probable cause to believe that misconduct occurred, and the value of additional formalities and safeguards would be too slight to justify holding, as a matter of constitutional principle that they must be adopted.

*Hewitt*, 459 U.S. at 476 (footnote, internal quotations, and citation omitted).

Thus, *Wilkinson*, *Greenholtz*, and *Hewitt* instruct that "some notice of charges and an opportunity to be heard" constitute adequate due process in the context of prison administration decisions.

Thus, in this case, the Proposed Policy contains adequate "informal nonadversary" procedures that provide notice and hearing rights to the OSP's inmates affected by a higher official's reversal of a recommendation against the inmate's placement or retention on Level 5. These procedures comport with the standards articulated in *Greenholtz* and *Hewitt*. As a result, the Court will not require Defendants to grant inmates a "face-to-face opportunity to be heard" following a procedurally-proper reversal of an earlier recommendation to reduce an inmate's Level 5 classification. Further, after reviewing the policy in detail, the Court does not agree with Plaintiffs

that the Proposed Policy does not require an OSP administrator who reverses a recommendation against Level 5 placement to state the basis of his reversal. *Id.* As a result, the Court will not find that the Proposed Policy's recommendation reversal procedures infringe the OSP inmates' due process rights.

**Plaintiffs' Issue 5:** **"Defendants' proposed policies do not provide due process protections comparable to New Policy 111-07 as described by the Supreme Court"**

Finally, with their fifth issue, Plaintiffs complain of the "narrowed scope" of the Proposed Policy and say that "[t]here should be one policy for Levels 5 and 4." *See* Doc. 752 at 27. Plaintiffs stress that New Policy 111-07, considered by the Supreme Court in *Wilkinson*, included security classifications for Level 4 and Level 5 inmates, as well as privilege definitions as between Level A (i.e., less restrictive) and Level B (i.e., more restrictive). *Id.* Now, Defendants propose four separate policies: 1) A policy for security classification of Level 5 prisoners (Doc. 710, Exhibit A.); 2) A policy for security classifications of Level 4 prisoners at the OSP (Doc. 738, Exhibit A.); 3) A policy for Level 4 prisoners not at the OSP; and 4) A policy for privilege level reviews of Levels 4 and 5 prisoners. *Id.* Tangential to their main argument, Plaintiffs also say that Defendants should use "an objective scoring instrument for security level review of all prisoners on Levels 5 and 4" similar to the "Supervision Review Form" that surfaced earlier in this litigation. *Id.* at 29-30. Finally, Plaintiffs specifically critique the proposed "Inmate Security Classification Level 4 at the OSP" with regard to voluntary placement at the OSP (Doc. 738, Exhibit A.):

> the Level 4 classification policy should give the prisoner notice (i) that he shall not be placed or retained at OSP without his written consent, (ii) that he can withdraw his consent in writing at any time, and (iii) that the Bureau of Classification will transfer him to another institution with all due speed upon receipt of a valid request for transfer.

-19-

*See* Doc. 716, at 14.  Plaintiffs claim that the Court's previous orders require these three elements and that "[t]he revised policy should incorporate all of these elements so that Level 4 prisoners will know their rights, and staff implementing the revised policy will know what has been ordered by the Court."  *Id.*

In opposition, Defendants say that "*Wilkinson* does not require that the provisions for security classification Levels 4 and 5 and the provisions for privilege Levels [A] and [B] must be included in one policy."  *See* Doc. 753 at 25.  Defendants argue that *Wilkinson* "dealt solely with the procedures by which Ohio's Policy classified inmates for placement at Level 5 at the OSP . . . [not] with the classification and placement of inmates at Level 4 at the OSP [or] with Level [A] and Level [B] privilege level reviews."  *Id.*  Defendants then raise a deference argument and say that "[r]ecently, Ohio prison administrators have reached an experience-based conclusion that developing and implementing separate policies for classification Levels 4 and 5 and a separate policy combining privilege Levels [A] and [B] will enable classification staff to more effectively carry out their assignments."  *Id.*  Concluding, Defendants assert that the "assessment made here by the prison administrators falls within the realm of professional judgment" and the Court must recognize that "[t]he need for substantial deference to their professional judgment is required."  *Id.* (citing *Beard v. Banks*, 126 S. Ct. 2572 (2006) (prisoner rights case involving free speech rights); *Overton v. Bazzetta*, 539 U.S. 126 (2003) (prisoner rights case involving visitation rights by minor children)).

With regard to *Wilkinson's* reach, Plaintiffs have the better argument.  Despite Defendants' efforts to construe *Wilkinson* to Ohio's advantage, the Supreme Court granted certiorari in the case "to consider what process an inmate must be afforded under the Due Process Clause when he is

considered for placement at OSP." 545 U.S. at 220. The Supreme Court did not distinguish between Level 5 and Level 4, or Level A and Level B. Rather, the *Wilkinson* Court took pains to review New Policy 111-07, entitled "Level 4 / Level 5 Classification for Male Inmates," which outlined "the classification procedures for placing inmates in Level 4 and Level 5 security classifications." *See* New Policy 111-07.

The Supreme Court made clear that it based its *Wilkinson* analysis and holding on the contents of New Policy 111-07: "Although the record is not altogether clear regarding the precise manner in which the New Policy operates, we construe it on the policy's text, the accompanying forms, and the parties' representations at oral argument and in their briefs." 545 U.S. at 216. Taking New Policy 111-07 as a whole, the Supreme Court held that OSP's conditions – including the classifications and procedures contained in the policy – "impose an atypical and significant hardship within the correctional context. It follows that [Plaintiffs] have a liberty interest in avoiding assignment to OSP." *Id.* at 224 (citation omitted). Having established a liberty interest for any inmate subjected to "assignment to OSP," the Supreme Court went on to "find that Ohio's New Policy provides a sufficient level of process" for the OSP's inmates. *Id.* at 223, 225. Thus, Defendants incorrectly construe *Wilkinson* as somehow focused solely on Level 5 inmates. The mere fact that Defendants now incarcerate some Level 4 inmates at the OSP, whereas they did not do so in 2005, does not free Ohio from its obligation to provide all the OSP inmates with fundamental due process rights. As a result, Ohio must afford all OSP inmates the full and equal constitutional protections set forth in *Wilkinson* and this Court's Orders.

Having said that, in its May 15, 2003 Order, this Court recognized that Level 4 inmates "who voluntarily choose to remain at the OSP have validly waived their right not to be subjected to

atypical conditions." *See* Doc. 414, at 24. Specifically, the Court held "that the [Level 4] inmates waived their right to challenge the procedure used to place or retain them at Level 4." *Id.* at 22. The central question then becomes: have the Level 4 inmates voluntarily and knowingly chosen to remain at the OSP such that they have validly waived their rights to challenge the applicable placement and retention procedures?

In its May 2003 Order, the Court found that Level 4 inmates met its "less formal knowing and voluntary waiver" standard. *Id.* In part, the Court found that the inmates met this standard because they waived their rights "with a full awareness of the consequences" and their right to transfer. *Id.* The Court quoted the election form used by the inmates to remain at the OSP:

> I have been notified that my privilege level status has been increased from privilege level 4B to privilege Level 4A and that I will be transferred to the Southern Ohio Correctional Facility. I request permission to remain at the Ohio State Penitentiary even though my privilege level has been increased to privilege Level 4A. I recognize that, if I remain at the Ohio State Penitentiary, I will be receiving level 4B privileges even though my status is privilege Level 4A. I also recognize that if I change my mind, DR&C will honor my request to be transferred to the Southern Ohio Correctional Facility. I also recognize that DR&C has the right to change my status if I become involved in serious misconduct.

*Id.* at 23.

Here, the proposed "Inmate Security Classification Level 4 at the OSP" states two rules governing voluntary placement of Level 4 inmates:

> a. No inmate shall be placed or retained at Classification Level 4 at the OSP without his written consent.
>
> b. The inmate can withdraw his consent in writing at any time and request a transfer. Following receipt of the written request for transfer, the Bureau of Classification and Reception ("the Bureau") will transfer him to another institution with all due speed (14 days or less).

Doc. 738, Exhibit A. Thus, Defendants' proposed policy incorporates the three elements Plaintiff

requests. However, the policy does not specify what notice the prisoner receives of the three elements. Plaintiffs submitted a recent version of the election form that merely states, "Your selection [to remain at OSP or to transfer to SOCF] doesn't guarantee the location of your choice but will be taken into consideration when the final placement is made." *See* Doc. 725, Exhibit 1. The form contains nothing regarding the rights and consequences associated with remaining at the OSP.

In order for the inmates to knowingly and voluntarily choose to remain at the OSP and thereby waive certain rights, they must "have full awareness of the consequences" of remaining at the OSP and the three elements Plaintiff lists above. The Court orders Defendants to so revise the election form.

Finally, Defendants need not incorporate a "scoring instrument for security level review of all prisoners on Levels 5 and 4" similar to the "Supervision Review Form" in its administration of the facility. As stated above, so long as Defendants provide a sufficient description of their reasons for determining the individual placement and retention decisions for each of the OSP inmates, they comply with the *Wilkinson* standard.

### III. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part Plaintiffs' motion.

IT IS SO ORDERED.

Dated: September 27, 2007            s/      *James S. Gwin*
                                     JAMES S. GWIN
                                     UNITED STATES DISTRICT JUDGE