UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
CHARLES E. AUSTIN, ET AL.,                    :        CASE NO. 4:01-CV-00071
                                              :
                    Plaintiffs,               :
                                              :
vs.                                           :        OPINION & ORDER
                                              :        [Resolving Docs. No. 776, 779, 790.]
REGINALD A. WILKINSON, ET AL.,                :
                                              :
                    Defendants.               :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        This Opinion and Order resolves the Defendants' motion to stay part of the Court's

September 27, 2007 Opinion and Order [Doc. 765.] pending the outcome of their appeal of that

Order. [Docs. 776, 790.] The Plaintiffs oppose the motion. [Doc. 779.]

        For the following reasons, the Court **DENIES** the Defendants' motion.


                                    **I. Background**

        On September 27, 2007, the Court addressed the Plaintiffs' motion for an order to modify

the Defendants' proposed prison policies affecting placement at the Ohio State Penitentiary ("OSP").

[Doc. 765.] With its Opinion and Order, the Court found that the Defendants continued to violate

the Plaintiffs' procedural due process rights in certain respects and ordered the Defendants to

accordingly modify their prison administration policies to conform to the requirements of the Due

Process Clause.  *Id.*  Two of the Court's directives in that Order are at issue here.

First, the Court ordered the Defendants to communicate their consideration of inmates' positive behavior during their annual security reviews:

> Based on *Wilkinson*'s emphasis on the importance of an inmate's behavior as a benchmark for the terms of his incarceration and after reviewing the "Annual supervision reviews for level 5 inmates" contained in the proposed policy, the Court finds Plaintiffs' request to be reasonable in asking that Defendants communicate in sufficient detail their consideration of an inmate's positive behavior at the OSP to the inmate at the time of the annual security review.  To do otherwise would provide notice, but no content and, as such, run the risk of falling short of the Constitution's adequacy requirement.
> Thus, the Court orders Defendants to consider and communicate in sufficient detail inmates' positive behavior during the annual review process.

[Doc. 765, at 9.]

Second, the Court ordered the Defendants to provide reasoned decisions to the inmates as to what they may do to reduce their classification status over time:

> The Court agrees with Plaintiffs that these notices do not provide inmates with a reasoned decision that gives them notice as to what they must do to reduce their status from Level 5. Indeed, these notices tell inmates that, regardless of their good behavior and self-improvement, they can expect to "remain[] confined at the OSP for many years."
> This message runs counter to the Supreme Court's jurisprudence and this Court's previous Orders. . . .  Thus, the Proposed Policy and the OSP's procedures in implementing them must provide for [] reasoned decisions to an inmate as to what he must do to reduce his classification status from Level 5.

*Id.* at 11-12.

The Defendants appealed the Court's September 27, 2007 Order on October 26, 2007.  [Doc. 775.]  With their appeal, the Defendants plan to challenge the second order above.  [Doc. 776, at 3.]

With their instant motion, the Defendants ask the Court to stay the two directives described above during the appeal: "Wherefore, Defendants ask the Court to stay its Order in Document 765, pages 7-12, for the duration of any and all appeals in this matter."  [Doc. 776, at 8; Doc. 790, at 8.]

The Plaintiffs request that the Court deny the stay. [Doc. 779.]

## II. Legal Standard and Analysis

Under Rule 62(c) of the Federal Rules of Civil Procedure, a district court has discretion to decide whether to grant a stay pending appeal from a final judgment providing injunctive relief:

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

FED. R. CIV. P. 62(c).

Courts balance four factors in determining whether staying an injunction pending appeal is appropriate:

> "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). All four factors are not prerequisites but are interconnected considerations that must be balanced together. *Id.*

*E.g., Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006).

The Court will now consider each factor and ultimately deny the stay.

## A. The Defendants are Unlikely to Prevail on their Appeal.

In its September 27, 2007 Opinion and Order, the Court ordered the Defendants to modify some of their prison policies to conform to the Due Process Clause's requirements. In their motion to stay, the Defendants state that they only challenge the second directive described above on appeal, the directive requiring them to provide "reasoned decisions to an inmate as to what he must do to

reduce his classification status from Level 5." [Doc. 776, at 3.] Recall, the Order deals only with information involving a move from Level 5, high-maximum security, to Level 4, maximum security. In Ohio, death-row inmates are generally held at Level 4. Also importantly, while the Court found that the Supreme Court's opinion required some description of conduct that could lead to a reduction of security level placement, it nowhere required Ohio to set up a binding obligation to reduce a security level placement, even if a Level 5 inmate satisfied the conduct recommended with an earlier security review.

The Defendants request the Court to stay the Court's Order, "pages 7-12," which includes both directives described above. [Doc. 776, at 8.; Doc. 790, at 8.] Erring on the side of caution, the Court will assume the Defendants appeal and seek a stay as to both directives. The Court will assess each directive's likelihood of survival upon appeal and ultimately find that the Defendants are unlikely to prevail on their appeal because the Court's directives are consistent with Supreme Court precedent.

First, the Court ordered the Defendants to comply with the Constitution by considering and communicating inmates' positive behavior during the annual security review process. [Doc. 765, at 9.] As the Court explained in its September 27, 2007 Opinion and Order, Supreme Court precedent supports this conclusion:

> In *Wilkinson*, the Supreme Court discusses not only the need for notice of authorities' placement decisions to ensure inmates' due process rights, but also underlines the requirement that the content of the communication be adequately detailed to "serve[] as a guide for future behavior." *See* 545 U.S. at 226 (citing *Greenholtz*, 442 U.S. at 16). The Supreme Court also instructs that "[c]ourts must give substantial deference to prison management decisions" before mandating substantive operating changes "when correctional officials conclude that a prisoner has engaged in disruptive behavior." *Id.* at 228. Thus, prison officials and courts correctly consider an inmate's behavior in decisions they make that affect the terms of an inmate's incarceration. Logically, this consideration should encompass the

inmate's positive and negative behavior, particularly in light of scarce resources available to administer most states' penal systems, including that of Ohio.

[Doc. 765, at 9.] The Defendants present no argument refuting this precedential support; instead, they focus on the Court's second directive. [Doc. 776, at 5; Doc. 790, at 2-4.]

Second, the Court ordered the Defendants to provide reasoned decisions to inmates as to what they must do to reduce their classification status from Level 5. [Doc. 765, at 12.] The Court's directive stemmed in large part from concerns regarding the "Notices of Anticipated Length of Stay at Level Five Security Classification" that indicated some inmates' positive progress and yet concluded that they must remain at OSP indefinitely "regardless of [their] behavior." *Id.* at 11 (citing two inmates' "Notices of Anticipated Length of Stay" in Doc. 752-7 and 752-14).

In *Wilkinson*, the Supreme Court emphasized the importance of communicating with inmates with enough detail to provide "a guide for future behavior." *See* 545 U.S. at 226 (citing *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 16 (1979)). In *Greenholtz*, a parole procedure case, the Supreme Court recognized the "long-range objective of rehabilitation" in the prison system and approved the parole procedure at issue in part because "when parole is denied," the Defendants "inform the inmate in what respects he falls short of qualifying for parole." *Greenholtz*, 442 at 13, 16.

Notices that say the inmates "should remain confined at the OSP for many years regardless of [their] behavior" squarely disregard the Supreme Court's mandate that the Defendants provide guidance to inmates regarding their future behavior. *See e.g.*, Doc. 752-7, 752-14. Without such guidance, the Defendants fail to meet the Supreme Court's mandate that they provide inmates with an adequate "factual basis" justifying their classification status. *See* 545 U.S. at 226. Instead, the language in the Notices described above informs inmates that beyond their placement offense, no

other facts will be genuinely considered in their annual security level reviews.  As stated in the September 27, 2007 Opinion and Order, Supreme Court precedent emphasizes the importance of developing and communicating factual bases for decisions:

> This message [in the Notices] runs counter to the Supreme Court's jurisprudence and this Court's previous Orders. An inmate's "notice of the factual basis leading to [a deprivation of liberty] and a fair opportunity for rebuttal . . . are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Wilkinson*, 545 U.S. at 225-26 (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 15 (1979); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 543 (1985); *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)). "Requiring [the OSP] officials to provide a brief summary of the factual basis for the classification review and allowing the [OSP] inmate a rebuttal opportunity safeguards against the inmates being mistaken for another or singled out for insufficient reason." *Id.* at 226. *See also* March 21, 2006 Order [Doc. 659 at 19], August 7, 2006 Order [Doc. 703 at 11].

[Doc. 765, at 12.]

With its September Order, the Court directs the Defendants to provide adequately reasoned classification decisions that include sufficient *guidance* to the inmates as to what actions they may take to reduce their classification status and rehabilitate over time.  The Court does not, as the Defendants suggest, "force" them to provide a "check-list" listing the "specific conduct []  necessary" to "guarantee a reduction in security level." [Doc. 790.]  The Court will further address this mischaracterization of the Court's directive in the next section.

Without more, the Court also disagrees with the Defendants two-sentence suggestion that the "unique facts and novel questions of law" involved in this case suffice to satisfy a showing under this first factor.  [Doc. 776, at 5.]

Finally, the Defendants note that "[t]he strength of showing which the defendant must make [under this first factor] varies inversely with the degree of injury the moving party will suffer absent the stay." [Doc. 776, at 5.] (citation omitted).  The Court next turns to its consideration of the

likelihood of the Defendants suffering irreparable harm absent such a stay. Because the Court finds irreparable harm near impossible, the Defendants face a higher, not a lower, burden with regard to their showing that they will prevail on the merits, a showing that they fail to make.

**B. The Defendants Are Unlikely to Suffer Irreparable Harm Absent a Stay.**

In the Sixth Circuit, courts consider the following three factors in the irreparable harm analysis: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Mich. Coal. of Radioactive Material Users, Inc. v. Greipentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (citations omitted). The Sixth Circuit cautions, "[t]he key word in this consideration is irreparable. . . . In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.* (citations omitted).

After considering the Defendants' arguments regarding these factors, the Court rejects the Defendants' characterization of the consequences of its Order. The Defendants present two concerns, "First, the Court's Order would require Defendants to all but issue guarantees to inmates at Level 5 status that once certain behaviors occur, the inmate will be released from Level 5 classification. Second, the Court's Order requires Defendants to issue criteria which effectively negate correctional experience and wisdom and insights gained from such experience." [Doc. 776, at 6; Doc. 790, at 5-6.]

At the outset, the Court notes that the Defendants' language of Level 5 inmates' potential "release" misleads. At stake is guidance to inmates as to security classification level reduction from

supermax to maximum security confinement, not release from confinement altogether.

Moreover, the Court nowhere "guarantees" inmates' release from Level 5 classification upon the meeting of a check-list of criteria at a certain point in time. Instead, consistent with the principles from the Supreme Court precedent cited above, the Court requires the Defendants to provide genuine *guidance* to Level 5 inmates regarding what positive steps they may take to reduce their classification status and rehabilitate over time. Rather than interfering with the Defendants' expertise, the Court encourages the Defendants to incorporate their "correctional experience and wisdom" into the guidance they provide to inmates. If inmates take the positive steps that the Defendants themselves recommend, nothing in the guidance requirement obligates the Defendants to move the inmate from high-maximum to maximum security classification.

As background, in April 2001, Plaintiffs filed their First Amended Complaint for Declaratory Judgment and Injunctive Relief. [Doc. 19.] With that amended complaint, the Plaintiffs limited their claims to procedural due process claims and Eighth Amendment Claims. *Id.* With that amended complaint, the Plaintiffs made no substantive due process claim.

On May 18, 2006, the Plaintiffs moved the Court to file a second amended complaint. [Doc 672]. With that proposed second amended complaint, the Plaintiffs sought to add a substantive due process claim: "Defendants' practice of indefinitely confining 'long-termers' under conditions of atypical and significant hardship without meaningful periodic review violates substantive due process and . . . imposes cruel and unusual punishment." *Id.* On December 5, 2006, this Court denied the effort to include a substantive due process claim in this case, albeit without prejudice to "longtermers'" right to make such claims in a separate action. [Doc. 722.] Thus, in this case, the Plaintiffs have no claim before this Court that would allow the Court to intercede in any decision

to retain an inmate at Level 5 no matter how irrational and costly to the taxpayers of Ohio. Instead, the Plaintiffs make only procedural due process claims.

Thus, the Court does not find that the Defendants are likely to suffer the irreparable injury they allege absent their requested stay.

**C. Others Face Harm if the Court Grants the Stay.**

The Court takes seriously the Plaintiffs' due process rights with regard to the classification procedures governing Level 5 status. The *Wilkinson* Court described confinement at the OSP as an "atypical and significant hardship." *Wilkinson*, 545 U.S. at 223-24. Although the current conditions are not identical to those presented to the *Wilkinson* Court, this Court finds that the Plaintiffs continue to have an interest in avoiding unnecessary confinement at Level 5 through constitutionally adequate procedural mechanisms.

The Court finds the Defendants' two arguments as to how the absence of the stay will harm the Plaintiffs unconvincing. First, the Defendants say that the challenged policy creates "an unreasonable expectation that such a reduction [in classification] automatically would be granted by fulfilling specified performance objectives. However, if a Level 5 inmate were to meet such objectives, but still be retained at security level 5 based upon other permissible, intangible factors, then an entirely avoidable set of problems for that inmate (and staff) would result from such unrealized expectations." [Doc. 790, at 7.] Second, the Defendants argue that such harm will be even greater should the Sixth Circuit later overturn the challenged policy on appeal. *Id.*

The argument makes little sense. In effect, the Defendants argue that if Ohio gives conditions and achievements that should be met to get to maximum security placement, Ohio will

be disadvantaged when an inmate complies with the behavior that Ohio has recommended. The Court has already rejected the Defendants' characterization of the Court's Order that would lead to the alleged unreasonable expectations: contrary to the Defendants' suggestion, the Court orders the Defendants to use their experience and judgment to provide adequate guidance to the inmates (not check-list guarantees) as to how they may increase their chance to reduce their classification level over time. Finally, the Court has already explained its finding that the Defendants are unlikely to prevail on their appeal; accordingly, the Defendants' concerns regarding the consequences of reversal on appeal weigh lightly.

### D.  The Stay is Not in the Public Interest.

The Defendants state that the stay is consistent with the public's interest in "the maintenance of order and security within prisons." [Doc. 776, at 7.; Doc. 790, at 8.] They claim that they must have the autonomy to confine Level 5 inmates as they see fit "without being forced to release those inmates merely because the inmates may have attained certain objectives but are otherwise not ready to be managed at a lower security level." [Doc. 790, at 8.] The Defendants' offensive use of language betrays the weakness of their argument. As described, in no way does security classification review deal with releasing any inmate. Instead, security level review involves whether the conduct and background of an inmate might allow that inmate to go to a maximum security classification, a classification that would annually cost Ohio taxpayers $23,000 less per inmate than placement at OSP.[1] More important and as discussed above, nothing in this Court's order would require the Department of Corrections to release an inmate simply because that inmate had met the

---

[1]According to the Ohio Department of Corrections, the daily cost per inmate at the Southern Ohio Correctional Facility at Lucasville is $103.01. The daily cost per inmate at OSP is $166.84.

conduct that the Department of Corrections itself had prescribed . Issues of substantive due process are not part of this case.

As described previously, the Court finds that the Defendants mischaracterize the Court's Order. Because the Court is not forcing the Defendants to release the inmates upon meeting a check-list of criteria, but instead is ordering them to provide genuine guidance to the inmates, according to their expertise and judgment, as to how they may reduce their classification status, the Court rejects the Defendants' claim that the Court's Order jeopardizes the Defendants' use of their expertise in making correctional decisions and therefore prison security more broadly.

### III.  Conclusion

For the reasons stated above, the Court **DENIES** the Defendants' motion to stay the Court's September 27, 2007 Order pending their appeal.


Dated: January 10, 2008                    s/            *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE